GSR Markets Limited v. Valkyrie Group Mr. Robbins. Good morning, Your Honor. Good morning. It's a crowded courtroom today. Pardon me? It's a very crowded courtroom today. Good reason to have arguments in Birmingham. We have a big courtroom. I love the courthouse in Atlanta, Your Honor. Oh, well, it's a pretty one. May it please the Court, my name is Richard Robbins. The alternative, though, was going to be Montgomery. Oh, okay. Do you still sit in Miami? We do. I'm ready for that. We're a true circuit court. We ride the circuit. Those are for the cases heard in the winter. May it please the Court, my name is Richard Robbins with Robbins Alloy Bell Infante Littlefield, and I'm here on behalf of the appellant GSR, and I'm going to first address an issue of jurisdiction that Your Honor has raised, and I presume you want me to address that first. I do. I can only speak for myself. I'm concerned about whether we have a final order. Of course, and I understand that. And then I will address that, and then I will turn to the core issue, which is the liability of a bank where it has notice or knowledge that trust funds are being misappropriated by the holder of the trust account, and we will show that that's been an exception to the general rule of no liability to non-customers in Georgia for over 100 years. First, make sure you need to first convince me we have a final order. Yep. I'll do my best, Your Honor. I do believe you have a final order, and the issue that the Court raised was. . . Well, tell me this. Was what was recounted in the order the notice you were provided by the clerk? Yes. Was that accurate, that the district court had denied GSR's motion with respect to the claims for conspiracy, conversion, and unjust enrichment? That is correct. That is what? That is correct. Okay. How do we have a final judgment if those claims are unresolved? Okay. May I proceed, Your Honor? Sure. We were dealing with parties who had defaulted. I understand that. And they were also under indictment in New York, so it made additional claims. Of course, one thing that a party can do is move to amend pleadings to dismiss claims. That is possible. But that wasn't done. No, it wasn't. Okay. I know they're not before. . . They weren't before the Court. It was default. But they're unresolved claims, aren't they? Your Honor, what we did file was, and yes, we did not do it this way, but what we did file, we waived our claim for attorney's fees even though the judge had granted them because there was no point. Right. So you filed two motions. You filed the motion for default judgment. Right. And then after the default judgment was entered and some more litigation, you filed a motion for the entry of final judgment. Yes. And in that motion, that's critical. What we said was, accordingly, as no claims remains pending against any defendant, there is no just reason to delay entry of final judgment. But the Court then repeated in its final judgment that we filed a motion for final judgment with a notice that it waives the claim for attorney's fees and also because no claims pending against any defendant remain pending, the Court enters final judgment. So we said we have no more claims against anybody. Now, could we have done it another way? Yes. But the end result was, we said we had no claims, the Court said we had no claims, and therefore, the final judgment. But there were claims that had not been resolved. Exactly. And our precedent, the precedent we cited, the Government Employees Insurance v. Glasgow, says, look, entry of judgment is not enough if the district court failed to dispose of all claims, even when a judgment is labeled a final judgment. Well, I think the Court did dispose of all claims when it recognized our representation that no claims remained against any of the defendants. When you moved for default judgment. That's correct. Afterwards. You haven't heard the question yet. When you moved for default, the clerk enters a default, right? Yes. Then at some point, you move for default judgment. Correct. When you did that, what did you move for default judgment on? I think there were a few points, and a couple were denied. We didn't move on all claims. I agree with you, at the time of the default. They're unresolved claims. I don't believe they're unresolved claims. All right, well, how were those claims resolved? Pardon? How were those claims resolved? We told the Court we had no more claims against any of the defendants. But without amending the pleading to drop them or anything like that. I understand that, but the end result was the same. And the Court entered a judgment. You're saying we should construe your motion to enter a final judgment as just a motion to allow you to drop all the remaining claims? Yes. When I say there's no remaining claims against any defendants, I think the Court can say, well, we can go through this motion to amend. We can do this and that. But we're dealing with a defaulting party, and there are no claims against any remaining defendants. That's an adjudication. And then the Court ordered the clerk to close the record, and it's terminated the case. I mean, if I may point you— You agree that you didn't prevail on those claims, nor did your opponent prevail on those claims. You're hanging your hat on the idea that by moving for final judgment, that we should construe that as implicitly dismissing those claims. That's really—that's what we have to do. Or abandoning those claims. Or abandoning. Abandoning is a better word. Because when we say there are no remaining claims against any defendants, I think the Court is entitled to say, okay, final judgment. And hold there are no remaining claims against any of the defendants. That's an adjudication of the claim. Because as to this one defendant, there was no way for the defendant to prevail because it was in default, right? Right. After you filed your motion for default judgment, any claims that were not adjudicated in that motion, there wasn't anything else you could do about it. There wasn't. There was no one to litigate against, right? There's no point in litigating further, which is why we said no remaining claims. The district court could have looked at the claim, notwithstanding the absence of the defendant's appearance, and said that claim fails as a matter of law. He could have done that, right? But only if you're moving for default judgment on it, which he did. Your Honor, I— Not on all claims. You did not—this is what I'm trying to figure out. You did not move for default judgment on all of the claims. That is correct. That you got on a clerk's default on, right? That's correct. Right. And so, to the Chief's point, the district court has an independent obligation to figure out whether you're entitled to default judgment on a claim that there's been a clerk's default on. But if you're not moving for default judgment on claim one and only on claim two, the district court is not going to decide claim one. That is right. And when we get all three— On the tort claims. And the district court didn't even grant you a default judgment on all of them. Right. My point—and I know Your Honors are familiar with the case of Arango, which I think dealt with a similar situation. And Your Honors, citing a United States Supreme Court case, said the failure to comport with all procedural rules governing entry of judgment did not necessarily render a court appeals without jurisdiction. And that involved a default situation where the trial court did not exactly follow what you were talking about. But the court— Why don't we get to your merits? Okay. Well, I have three minutes left on the merits, which is unfortunate. That's why I thought you needed to get to it. Yeah. Okay. Here's a point. You've got a number of cases from outside the jurisdiction, including one of ours on Florida law, which said that banks may have duty in these sorts of circumstances. What is it about Georgia law that makes you think that the law in that state would go that way? Because there's nothing in Georgia directly on Florida. One, two, three, four, five, six Georgia cases going back to 1907. Which say what? Which say that they uphold the exception to the general rule—no one argues the general rule is that a bank has no liability to a non-customer. Nobody argues that. But the Georgia courts have recognized the exception that if a bank has noticed or knowledge that a breach of trust is being committed by the improper withdrawal of funds, it incurs liability. To whom? To the person whose funds were being misappropriated. So I think you're— Which is a customer. No. When you read that quote, what case are you reading that quote from? I'm reading—that's the 1907 case. Right, so that's Macon versus—yeah, I've got that in front of me. The plaintiff in that case was a customer. Well, you'll see numerous cases. The 1938 Tattnall case. The 1952 Citizens Bank case. The 1956 National Newgrape case. The 2007 Dalton Point case. And the 2014 First American Title case, Judge Land in the Middle District, has a very good explanation of the reasons for the rule, and that was a non-customer, and the funds were being embezzled by the account holder. I thought that was the only case in Georgia that dealt with this factual scenario involving a duty to a non-customer due to misconduct by the bank's customer. In the Dalton Point case, there are multiple cases where it is expressly designated. The statement of the law in the cases that I just told you, most of them begin with the general rule is no liability to a non-customer. However, exception applies. The district court missed all those cases? Yes. And it is frustrating because he found actual knowledge, because at that time, a bank is complicit when it has actual knowledge of its appropriation and it does nothing. Then the duty arises. He cited the Chase case but was very dismissive of it because he said it was Florida law. In fact, if you read the Chase case, the 11th Circuit, the court relied on principles from the 2nd Circuit, the 9th Circuit. So this is a very detailed analysis of the basis for the law, but there's a hundred-year history, and the judge didn't even reference them. Okay, Mr. Robbins. You've saved three minutes. Let's hear from Mr. Hinson. Mr. Hinson. Good morning. I'm Brent Hinson, and my partner, Tala Amirfazli, and I are here on behalf of Appley Wells Fargo Bank. What's your position on jurisdiction? Our position on jurisdiction is we would, as we won in the lower court, we would certainly like the court to be able to find that it has jurisdiction here. That being said, in all candor to the court, our analysis is the court does not have jurisdiction over this. It was not a final order. Well, let me ask you this then. So when they moved for default judgment, and then the district court granted default judgment on certain claims, didn't address other claims, what else was left to happen after that vis-a-vis the plaintiff versus that defendant? What else could the plaintiff have done versus that defendant? What else could the district court have done versus that defendant? At that stage, I guess, as the courts pointed out, the appellants moved for default judgment on roughly four, really five counts, and one of those was the attorney's fees. They were all the tort claims. The district court granted the default judgment as to only one of those. It denied default judgment as to the others, right, or did it just not address them? It said that there was not sufficient evidence, I guess, at that stage to prove in the record that there was a judgment. Yeah, so we've said that a motion for default judgment is basically one that the district court is supposed to analyze as a 12B6 motion. So the question is you just look at the complaint and see whether it sufficiently states a claim. So when the district court denied default judgment on some of those claims, wasn't it saying that they didn't state a claim under 12B6? I guess, yeah, in analyzing those claims that it denied it on, it could be essentially making that equivalent type of standard, but it did not have before it multiple other claims, statutory claims, an independent count, count 18, I believe it was, in the amended complaint, which is a standalone count for punitive damages, for example. Those were not resolved either through an attempt, through a motion for default judgment, or any ruling by the court. And so those claims. Which claims? These would be the claims under the Georgia RICO, the separate count for punitive damages, and violation of commodities. So it's a claim for punitive damages. I mean, that's a remedy. You know, it's like the attorney's fees. You know, I see all these counts for conspiracy as if it's a claim. You know, those aren't claims. Yeah, it's just how they, I'm just pointing out that's how they articulate it. You're saying there were things in the complaint that the district court's order just didn't address, right? It just didn't address. And that's, I guess that's what I, what else could, what, you know, just let's assume that the district court's order contemplated additional proceedings on those claims. What would those proceedings be against a defendant that didn't show up? I'm just trying to figure out, like, what would there be to do? Well, I think with regards, so, for example, with the Georgia RICO claim, they sought not just the compensatory damages that they ultimately recovered through the default judgment on the negligence claim, that $1.5 million number. They also sought treble damages under the RICO statute. I think they said no less than that. Well, if they wanted to abandon them, they could move to amend their pleadings to drop those from the cooperative complaint, right? Yes. I think the, I guess, technically proper thing to do would have been, after receiving the default judgment for the amount, if they were satisfied with that judgment against that group of defendants, to have moved to dismiss all of their other remaining claims and counts and any requests for any further damages to waive those. If there's no, I'm asking the wrong person because this is not your appeal, but I'll ask your colleague too. So now, if there's no finality and this appeal gets dismissed, what happens on remand? The plaintiff has to move to set aside the default judgment and then move to file an amended complaint and then have a new default judgment entered and then come back up here again? I believe that if they're satisfied, which I understand they are, with the judgment that they received, the monetary judgment against that group of defaulting defendants, that all that would be required would be for them to move, the appellants, to move to the district court to dismiss all their remaining claims. The case is closed. There's a default judgment. Well, there's a default judgment as to some but not all. How can you move to dismiss? You have to set aside the default judgment, right? To amend the pleading. I guess the distinction I might draw is that they would move to set aside, they wouldn't need to move to set aside the default judgment as to the negligence claim, the one they want on, because they're satisfied with that. If we rule there's not a final judgment, final judgment, there may be a default judgment as to some claims. The district court would be free to revisit the final judgment issue and do what is necessary to make the judgment final, right? That would be my understanding, yes. Let me ask you this. I think likely what would happen is we would send this back down and then you would get some filing like the one that they filed at the end of the case that said, please enter a final judgment, we're done litigating this case, we don't want to do it anymore. Why isn't that enough to have a final judgment? Let's just assume that the default judgment itself is not enough and that these claims are still pending. Why, when they went to the district court and said, we don't want to litigate these claims anymore, why isn't that enough? I think that would be enough if it goes back to the court. Well, they already did it, I guess is my point. That was the motion that they filed to enter a final judgment. I'm with you. I believe it's probably addressed in some part by the Arengo case that they've cited to, which if you looked at that case, one of the distinguishing factors there, or dispositive factors, I think, for the 11th Circuit when it was looking at this situation where a default judgment had not actually been sought in that case, but the court found that the damages issue, all of the damages had basically been set by the court for those claims, even though a default had been entered by the clerk, but no actual judgment had been entered on the record. And so the court determined, I think they say in the Arengo case, if we send this back to the district court, all that really has to happen is sort of this administrative, the ministerial entry on the clerk's docket of a judgment in the amount the court has already found. Here, you have unresolved not only claims, but you have unresolved damages. You have the compensatory of the $1.5 million in change number, but there are, at least as to the remaining claims, there are, just to give an example, the Georgia RICO claim, there's a treble damages claim. Moving to the merits, it seems to me like the worst case for your position is Dalton Point versus Regions Bank. Could you address that? Yes. You know, and just for starting at the top of that, I mean, the appellants have argued, of course, that this exception to the general law applies, and they cite the Chain case, which we, of course, and the district court found came up under Florida law, and an analysis of Florida law. Georgia cases, and he does cite numerous cases, including the Dalton Point case, the Georgia cases have found or they've discussed these types of situations where you have a trust or an account type of relationship by a customer, and some third party is either defrauded or claims that they are, and they seek liability against the bank. But the cases in Georgia, and I would say including the Dalton Point case, don't really, at least in our view, don't arise under an exception to this general law for common law negligence, which is what the district court addressed here and what's on appeal before this court. Those were looked at in the context either sometimes provisions of the UCC were involved, but a lot of those were involved with the Georgia. There's a financial institutions section of the code, and it's one of the issues that we raised with the court below in a defensive manner, but was not raised, I guess, offensively by the appellants, which is this Code of Georgia Section 7-1-352, which essentially provides that if you're in a fiduciary type of relationship, a customer of the bank, that the bank is not going to be responsible. This is a statutory sort of shield, if you will. The bank is not responsible for third party transactions by that trustee. The bank is entitled under the law to presume that a trustee in a relationship with their fiduciaries, they're going to carry that out according to their agreements, and the bank's not tasked with that. So I say that, and I'm trying to answer your question, Judge Brasher. Dalton's UCC case is not a negligence case. That's where, yeah, they ultimately found that's where it centered and turned on. The wrong way of trying to get to this point. Yes. It seems to me that's really, that's the point of Dalton Boyd. Yes. Thank you, Your Honor, for making my argument for me, but yes. So my point, bigger point, is all of these cases, the six cases, all of these that appellants cite to this court are not cases where they applied the chain standard, the chain case standard out of Florida law. It's a different analysis under a different statute, and it's not something they've argued with regards to that statute before this court. So, you know, I do think it comes down, and if you read their briefs, which you have, the narrow issue is only on this negligence claim, and does this exception that was articulated in the chain case arising under Florida law apply here? And did the district court err in not applying that? To be fair, it doesn't just arise under Florida law. You have treatises which indicate that the exception is followed in a number of jurisdictions. That doesn't answer the question here, of course, but it's not just Florida, right? There are a number of other jurisdictions that go the same way and recognize that exception in certain circumstances. Correct, Judge Horton. There are other cases in other states that would follow that or some sort of semblance of that, and what Chang basically said the exception is is if the bank knows of a fiduciary relationship, it knows it's got somebody that's got a trust account, it's a customer, and they have a fiduciary relationship with some third party, that while the bank is ordinarily not liable or owes no duty to that non-customer, there's an exception if the bank has actual knowledge. That's the standard articulated in Chang's actual knowledge that a fraud has occurred or that a misappropriation has occurred. And the cases, and we've cited a lot of these, but the case law, including a lot of the cases that the appellants have cited, are replete with, that's a high standard. It's not a constructive knowledge type of standard. And in that Chang case, for example, there were egregious circumstances, and that was a motion to dismiss case, not a motion for summary judgment. The question was whether in Chang they had sufficiently pled an exception or should be allowed to file an amended complaint to try to do so. So again, it's a high standard, and it applied an actual knowledge standard essentially there, and a lot of the cases that have interpreted Chang or this similar concept that they're referring to, this fiduciary exception to the general rule, look at. So in your view, duty and breach under Florida law, for example, collapse into the same requirement? Normally, knowledge of the fraud and failure to do anything about it is the breach, not the duty. But you seem to be suggesting that they're both the same thing, that the knowledge is built into the duty as opposed to the breach. Well, I think the duty, whether their duty exists, I think we start with that general premise, which covers that, which is there is not a duty owed to a non-customer of a bank in a common law negligence situation like that. The element of duty is simply not there. Georgia law has recognized for a while, I think, that escrow agents owe a fiduciary duty to their clients or customers. Does that impact in any way your analysis of the exception here? I don't think it does, because I think, again, the general law on this, which is that there's just not a duty owed. And then if there is an exception, and the only one they've articulated here is the Chang exception, the fiduciary exception should apply, again, that has to do with actual knowledge. Georgia, and I think I've not been able, and I wasn't able to locate a similar statute or statutory scheme in Florida, for example, when we were looking at it, but Georgia has the statutory scheme. And, again, 71352 governs a fiduciary relationship, a trust relationship, and it provides some insight into what the Georgia legislature, of course, thinks a bank's protection should be in the state of Georgia with regards to a relationship like an escrow relationship, as we had here. What's the best case for you in Georgia that lays out the general rule of no duty to a third party without any suggestion or mention of the exception? Your Honor, I would have to refer to my brief to tell you. I know we've cited various of those cases. I don't know that there's specifically one that is, like, on point. I think what we've cited are a lot of, you know, a dozen or so cases where the general duty is applied and where motions to dismiss have been upheld, even where the alleged facts were much more egregious than what the appellants allege here. We've cited cases even where summary judgment was upheld. I think even in the Dalton case that they cite, ultimately the motion for summary judgment, I think, was affirmed on that case. So I think it's a—I don't know that there's one specific case. I think it's really more of a—I know one of the cases we cite, and I can't tell you which one, but it says it's essentially the universal rule or law now, and certainly it is in the state of Georgia. Okay, thank you. Thank you, Your Honor. Thank you, Mr. Hinton. Mr. Robbins, you've saved three minutes. Yes, Your Honor. Let me say three things. First, the exception has been raised in a variety of different contexts, and it all comes back to the same place, which is the duty owed by the bank is triggered when it has actual knowledge of misappropriation in the trust account. That is a separate exception. In Chang, not just under Florida law, this court noted banks do have a duty to safeguard trust funds deposited with them when confronted with clear evidence indicating those funds are being mishandled. They were citing two Second Circuit and Ninth Circuit cases. But that's all part of this body of law that has been recognized in Georgia. However you come to that conclusion, a bank cannot just sit on its hand when it has actual knowledge of misappropriation. Can I ask you a question to try to understand the claim? So let's assume that you're correct and that Georgia follows this exception to the general rule. Given the way things played out here chronologically, how is there a breach that caused your client's loss? Well, the trial… Because by the time that your client started complaining when the Bitcoin wasn't being delivered, the account was already out a million plus. Well, there was some money, several hundred thousand out. There were two, as we point out in the brief, there were two reports on the same account of fraudulent activity in this trust account where people said they weren't getting their several hundred thousand dollars back. And they saw that there was no money in their trust account. So they knew before we even deposited. You think that their duty arose before your client's complaint? They maintained, yes, I do. But at the minimum, it arose when we reported it, that we had $4 million we sent to them. And you will see the testimony we cite in our brief that the relationship manager to Ms. McDonald looked at the accounts and saw there was not $4 million in the accounts. And he saw that there were payments back to the people that had been defrauded. I mean, that was like a Ponzi scheme. He was using GSR's money to… She was using GSR's money to repay these people who were complaining of fraud in the trust account. And he saw that there were major transfers of hundreds of thousands of dollars to her personal accounts. You don't have to take my word for it. He said, I knew there was a serious problem here with this account. And I reported it. But they proceeded to do nothing for a period of 10 days. The day after we reported this, another $800,000 disappeared. The day after. I would respectfully request, if it takes 10 seconds, you can remand to the… Under a Rongo case, you can remand to the district court if there's any concern about the finality of the judgment that the court can clarify. That's what this court said it would do in a Rongo. I would respectfully request that, at the same time, you could remand to the district court for consideration of this issue we've been talking about on the merits, given the ample Georgia cases and federal cases on this subject. So… Okay. Thank you. We've got your case. Thank you, Your Honor.